IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

      VS.               CASE NO. 2:18-CR-20020-PKH-MEF-1

DANIEL GILES                                                DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed October 7, 2020. (ECF No. 58). The United States filed a response on November 5, 2020. (ECF No. 63). The Defendant has not filed a reply. The matter is ready for Report and Recommendation.

## I.    Background

On October 17, 2018, the Defendant, Daniel Giles ("Giles"), was named in a three-count Indictment filed in the Western District of Arkansas, Fort Smith Division. (ECF No. 1). Giles and a Co-Defendant, Romaris Smith ("Smith"), were both charged with: Count One, aiding and abetting the commission of bank robbery by force, violence, and intimidation, in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2; Count Two, receiving, possessing, concealing, storing and disposing of money that had been taken from the care, custody, control, management and possession of a federally-insured bank, while knowing the money had been stolen, and aiding and abetting each other in the commission of the crime, in violation of 18 U.S.C. § 2113(c) and 18 U.S.C. § 2; and, Count Three, transporting, transmitting and transferring in interstate commerce currency in excess of $5,000.00 while knowing that currency had been stolen, and aiding and abetting one another in the commission of the offense, in violation of 18 U.S.C. § 2314 and 18 U.S.C. § 2. (*Id.*). Giles was arrested on November 6, 2018 (ECF No. 23), and he appeared for

–1–

arraignment on November 8, 2018, at which time he entered a not guilty plea to the Indictment. (ECF No. 12).  Assistant Federal Public Defender James B. Pierce ("Pierce") was appointed to represent Giles.  (*Id*.; ECF No. 14).

When he committed the offenses charged in this case, Giles was on federal supervision in the Southern District of Texas in Case No. 4:09CR00554-001 for his conviction in 2010 for Theft of Government Property over $1,000.00, in violation of 18 U.S.C. § 641.  After Giles was indicted here in the Western District of Arkansas in this case, the Southern District of Texas transferred jurisdiction of Case No. 4:09CR00554-001 to the Western District of Arkansas. The case transferred from the Southern District of Texas became Case No. 2:19-CR-20017-001 in the Western District of Arkansas.

The United States Probation Office for the Western District of Arkansas filed a Supplemental Petition for Warrant or Summons for Offender Under Supervision ("Petition") in Case No. 2:19CR20017-001.  (ECF No. 2).  The Petition alleged Giles failed to comply with the mandatory condition of supervised release that had been imposed in the Southern District of Texas which required him to not commit another federal, state, or local crime.  (*Id*.).  Giles' commission of bank robbery in the Western District of Arkansas was the basis for the new law violation alleged in the Petition.

Giles entered into a written Plea Agreement with the Government in which he agreed to plead guilty to Count One of the Indictment, charging him with aiding and abetting the commission of bank robbery by force, violence, and intimidation, in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2, and the Government agreeing to dismiss Count Two and Count Three after sentence was imposed.  (ECF No. 31, ¶ 1).  Giles represented that he had read the Plea Agreement and carefully reviewed every part of it with his counsel; that he understood the agreement and was not

under the influence of anything that would impede his ability to fully understand the agreement; that no promises, agreements, understandings, or conditions had been made to induce him to enter into the agreement other than those set forth in the agreement; that he was fully satisfied with the legal services provided by defense counsel in connection with the plea agreement and matters related to it; that he entered into the Plea Agreement freely, voluntarily, and without reservation; and, that his desire to enter a guilty plea was not the result of threats or coercion directed at him or anyone connected to him.  (ECF No. 31, ¶ 26).

Giles also stated in the Plea Agreement that he had fully discussed the facts of the case with his defense counsel and the elements of the crime to which he agreed to plead guilty.  (ECF No. 31, ¶ 2).  He further admitted committing each of the elements of the offense to which he was pleading guilty, and he admitted there was a factual basis for his guilty plea.  (*Id.*).  Giles specifically admitted the following facts are true and undisputed:

- On July 26, 2018, at approximately 10:56 a.m., Giles drove a vehicle with his passenger, Romaris Smith, to the Bank of the Ozarks branch located at 5401 Rogers Avenue in Fort Smith, which is located in the Western District of Arkansas, and is a bank insured by the Federal Deposit Insurance Corporation ("FDIC").  At the same time Giles and Smith approached the bank in their vehicle, two bank employees were outside of the bank changing the bank's Automated Teller Machines ("ATM").

- Smith exited the vehicle with his shirt covering his face and approached the two bank employees who were intimidated by this act.  Smith quickly picked up the two ATM canisters which contained over $18,000 in United States Currency and reentered the vehicle with the money.  Giles and Smith fled the bank's parking lot

and headed toward Oklahoma.  An employee at a business across the street from the bank observed the incident, entered a separate vehicle, telephoned law enforcement officers, and pursued Giles and Smith into Oklahoma.

- The vehicle ultimately crashed in Oklahoma and both Giles and Smith fled on foot. Giles and Smith were separately apprehended later that day in Oklahoma.  At the time of arrest, Smith was in possession of a backpack that contained over $18,000.

- Following the bank robbery, law enforcement officers interviewed the two bank employees who stated they were scared to death and still in fear following the bank robbery.

(ECF No. 31, ¶ 2(a-d)).

On January 7, 2019, Giles appeared with counsel before the Hon. P. K. Holmes, III, U. S. District Judge, for a change of plea hearing.  (ECF No. 30).  Pursuant to the Plea Agreement, Giles pleaded guilty to Count One of the Indictment.  (*Id*.).  The Court found that Giles' guilty plea was voluntary, supported by a factual basis, and the guilty plea was accepted.  (*Id*.).  The Court reserved approval of the Plea Agreement pending completion of a Presentence Investigation Report ("PSR").  (*Id*.).

An initial PSR was prepared by the United States Probation Office on March 6, 2019.  (ECF No. 37).  The PSR reported that on July 26, 2018, at approximately 10:56 a.m., Giles drove a vehicle with his passenger, Smith, to the Bank of the Ozarks branch located at 5401 Rogers Avenue, Fort Smith, Arkansas, a bank insured by the FDIC.  (*Id*., ¶ 10).  As Giles and Smith approached the bank in their vehicle, two bank employees (T. L. and S. M.) were outside the bank changing the bank's ATMs.  (*Id*., ¶ 11).  Smith exited the vehicle with his shirt covering his face and approached the two bank employees who were intimidated by this act.  T. L. started to scream

–4–

when Smith approached her. (*Id*., ¶ 12). Smith then quickly picked up the two ATM canisters which contained approximately $20,000 in United States Currency and reentered the vehicle with the money. (*Id*.). According to T. L., Smith did not say anything to her, and it did not appear as if he possessed a weapon, but T. L. stated she felt "scared to death." (*Id*.). Giles and Smith fled the bank's parking lot and headed to Oklahoma. (*Id*., ¶ 13). An eyewitness (J. M.) employed by a business across the street from the bank observed the incident. (*Id*.). According to J. M., Giles and Smith left the bank's parking lot at a high rate of speed, and he reported that one bank teller appeared "shocked" and the other appeared "hysterical" when Smith approached them. (*Id*.). Officers interviewed the two bank employees, who stated they were "scared to death" and were still in fear following the robbery. (*Id*., ¶ 19). No objections to the PSR were made by either Giles (ECF No. 42) or the Government (ECF No. 43).

A final PSR was submitted to the Court on April 5, 2019. (ECF No. 44). The final PSR determined that Giles was accountable for the robbery of a financial institution. (*Id*., ¶ 20). Giles' Base Offense Level was determined to be 20. (*Id*., ¶ 26). Because the property of a financial institution or post office was taken, a two-level increase was assessed pursuant to USSG § 2B3.1(b)(1). (*Id*., ¶ 27). After a three-level reduction for acceptance of responsibility, Giles' Total Offense Level was determined to be 19. (*Id*., ¶¶ 33-35). Giles had a criminal history score of 10, placing him in Criminal History Category V. (*Id*., ¶¶ 49-51). The statutory maximum term of imprisonment for the offense of conviction is 20 years. (*Id*., ¶ 85). Based upon a Total Offense Level of 19 and a Criminal History Category of V, Giles' advisory guidelines range was determined to be 57 to 71 months imprisonment. (*Id*., ¶ 86).

Giles appeared for sentencing on June 12, 2019. (ECF No. 51). A final hearing regarding revocation of Giles' supervised release was held at the same time. (Case No. 2:19-CR-20017-001,

ECF No. 11). Upon the Court's inquiry, Giles stated his satisfaction with defense counsel. (ECF No. 51; No. 2:19-CR-20017-001, ECF No. 13, pp. 7, 41). The Court determined that Giles and his counsel read and discussed the PSR. (ECF No. 51). Inquiry was made that Giles had reviewed the probation petition and supplemental probation petition filed in Case No. 2:19-CR-20017-001. (*Id*.). The Government presented testimony from two witnesses (the two bank employee victims) in support of its position that the bank robbery was a crime of violence which constituted a Grade A violation of Giles' supervised release. (*Id*.; No. 2:19-CR-20017-001, ECF No. 13, pp. 9-30). Following that testimony and argument from counsel, the Court found that the actual offense conduct did not demonstrate the use of physical force, any attempted use of physical force, or any threat to use physical force, so the Court determined the conduct constituted a Grade B violation of Giles' supervised release. (No. 2:19-CR-20017-001, ECF No. 13, pp. 38-39).

The final PSR was reviewed and adopted by the Court. (ECF No. 51). The Court expressed final approval of the Plea Agreement. (*Id*.). Victim impact statements were read into the record; counsel made statements; and Giles exercised his right to allocution. (*Id*.). The Court found Giles in violation in Case No. 2:19-CR-20017-001 and revoked his period of supervised release. (*Id*.; No. 2:19-CR-20017-001, ECF No. 11). The Court then imposed a guidelines sentence of 71 months imprisonment, three years supervised release, no fine, restitution in the amount of $1,180.00, and a $100.00 special assessment for the underlying bank robbery offense. (ECF No. 51). A sentence of eight months imprisonment was imposed for the supervised release violation, to run consecutively to the sentence for the underlying bank robbery offense. (*Id*.; No. 2:19-CR-20017-001, ECF No. 11). Judgment was entered by the Court on June 13, 2019. (ECF No. 53).

Giles did not pursue a direct appeal from the Judgment.

–6–

On October 5, 2020,[1] Giles filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion").  (ECF No. 58).  The Motion raises one ground for relief: actual innocence because Giles did not know his actions were objectively intimidating.  (*Id*., p. 4).  Regarding timeliness of the Motion, Giles alleges that "[a]ctual innocence is an exception to the procedural bar <u>and</u> statute of limitations," citing *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  (*Id*., p. 11).

The United States filed a response on November 5, 2020.  (ECF No. 63).  The Government contends that Giles' Motion is untimely, his claim procedurally defaulted, and that Giles fails to establish actual innocence.  (*Id*.).  Giles did not file a reply.

## II.    Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear

---

[1] The actual filing date shown in the Court's CM/ECF system is October 7, 2020, but pursuant to the Prison Mailbox Rule the Court will consider the filing date to be October 5, 2020, the date on which Giles certified under penalty of perjury that he placed the Motion in the prison mailing system.  (ECF No. 58, p. 12).  Rule 3(d), Rules Governing Section 2255 Proceedings.

appropriate." 28 U.S.C. § 2255(b).  A thorough review of the Motion and the files and records of this case conclusively shows that Giles is not entitled to relief, and the undersigned recommends the dismissal of his Motion with prejudice.

### A.    Timeliness

A one-year period of limitation applies to motions under 28 U.S.C. § 2255.  This period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f).

The operative date in this case is "the date on which the judgment of conviction becomes final," as Giles raises no issue regarding any impediment created by Government action to making his Motion, he asserts no right newly recognized by the Supreme Court made retroactive to cases on collateral review, and he makes no claim based on newly discovered evidence.  A criminal judgment from which no appeal is taken becomes final when the time for filing a direct appeal expires. *Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n.2 (8th Cir. 2008).  The Judgment in this case was entered on June 13, 2019.  Had Giles wished to file an appeal, he was required to do so within 14 days.  Fed. R. App. P. 4(b)(1)(A)(i).  Giles did not file an appeal, and his criminal judgment became final on June 27, 2019.  From that date, Giles had one year, or until June 27, 2020, to timely file his § 2255 habeas petition.  Giles filed his § 2255 Motion on October 5, 2020,

which was three months and eight days after the limitations period expired.

Timeliness is crucial to the consideration of a motion made under § 2255.  *See, e.g., Alsup v. United States*, No. 09-3266-CV-S-RED, 2010 WL 376990, at pp. 2-3, (W.D. Mo. Jan. 26, 2010) (unpublished) (granting the Government's motion to dismiss petitioner's § 2255 motion where the motion was filed *one day* out of time).  *See also United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) ("Foreclosing litigants from bringing their claim because they missed the filing deadline by one day may seem harsh, but courts have to draw lines somewhere, statutes of limitation protect important social interests (internal citation omitted), and limitation periods work both ways - you can be sure [petitioner] would not be pooh-poohing the prosecution's tardiness if he had been indicted one day after the statute of limitations expired for his crimes.").  Here, of course, we are not dealing with Giles just missing the limitations deadline by one day, but by a period of over three months.  Consequently, unless either statutory or equitable tolling applies, the Court lacks jurisdiction to consider the merits of Giles' claim and his § 2255 Motion should be summarily dismissed.

### 1.      Statutory Tolling

The one-year period within which to file a § 2255 motion may, in an appropriate case, begin on the date on which an impediment created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; from the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, from the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f)(2)-(4).  Giles' § 2255 Motion offers nothing in support of any

of these grounds to extend the one-year limitations period.

### 2. Equitable Tolling

The Eighth Circuit has held that the doctrine of equitable tolling is available to a § 2255 movant, but only "under limited conditions, for example, where extraordinary circumstances beyond a prisoner's control prevent the timely filing." *See Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001); *United States v. Martin*, 408 F.3d 1089, 1092 (8th Cir. 2005). The use of equitable procedures should be infrequent, *see Flanders v. Graves*, 299 F.3d 974, 976 (8th Cir. 2002), and will not be applied if the habeas movant has not diligently pursued his rights, *see Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007). "Equitable tolling is an exceedingly narrow window of relief." *Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005).

Giles has not alleged that any extraordinary circumstances beyond his control prevented a timely filing of his § 2255 Motion. He does not allege that the Government somehow lulled him into inaction. He does not refer to any extraordinary circumstances, attributable to the Government or to any other external cause, that prevented him from discovering the facts upon which his claim is based soon enough to enable him to bring a timely habeas petition.

Nor has Giles shown he exercised due diligence in the pursuit of his rights. He now asserts a claim of actual innocence that could have been raised on direct appeal and during the one-year limitations period, and he alleges no new facts that would explain a delay in bringing his claim. Thus, he failed to allege and establish any factual basis whatsoever to fit within the "exceedingly narrow window of relief" that equitable tolling provides, and his § 2255 Motion should be dismissed as untimely.

### B. Procedural Default

Giles alleges he is "actually innocent" of the bank robbery because he did not know his

actions were objectively intimidating. (ECF No. 58, p. 4). He acknowledges that he pleaded guilty to bank robbery by intimidation on January 7, 2019, but he argues "to secure a conviction of bank robbery 'by intimidation,' the government must prove not only that I knowingly took property, but also that I knew that my actions were objectively intimidating." (*Id*). He continues, "(1) I was not charged with the element of knowledge with respect to the threat of force; (2) I did not admit to having knowledge with respect to the threat of force; and (3) during sentencing the judge explicitly found the actual conduct 'does not demonstrate any use … or threatened use of physical force.'" (*Id*.). This claim, not raised on direct appeal, is procedurally defaulted.

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982) (internal citations omitted). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation marks and citation omitted). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id*.

The failure to raise an issue on direct appeal ordinarily constitutes a procedural default and

precludes a defendant's ability to raise that issue for the first time in a § 2255 motion. *Dejan v. United States*, 208 F.3d 682, 685 (8th Cir. 2000). When a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate "cause" and actual "prejudice," or that he is actually innocent. *Bousley*, 523 U.S. at 622; *Apfel*, 97 F.3d at 1076; and *Frady*, 456 U.S. at 167-68. "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

Giles makes no such showing of any "cause" to avoid the procedural default. He fails to allege or demonstrate how the factual or legal basis for his claim was not reasonably available to him in time to pursue relief on direct appeal. Instead, citing *McQuiggin v. Perkins*, 569 U.S. 383 (2013), Giles asserts that "actual innocence is an exception to procedural bar and statute of limitations." (ECF No. 58, p. 11).

*McQuiggin* held that actual innocence, if proved, may serve as a gateway through which a habeas petitioner may pass whether the impediment is a procedural bar or expiration of the statute of limitations. *Id.* at 386. The Supreme Court cautioned, however, that "tenable actual-innocence gateway pleas are rare," and the threshold requirement only met when the petitioner persuades the district court that, "*in light of the new evidence*, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (emphasis added). Further, the timing of the petition is a factor bearing on the reliability of the new evidence purporting to show actual innocence. *Id.*

Thus, to establish a claim of actual innocence Giles must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. *Bousley*,

523 U.S. at 622 (citing *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). And "actual innocence" means factual innocence and not just legal insufficiency. *Id.* at 623.

Giles pleaded guilty to aiding and abetting in bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2. He admitted driving a vehicle with his passenger, co-defendant Smith, to a federally insured bank branch in Fort Smith, Arkansas, where two bank employees were servicing the bank's ATM. (ECF No. 31, ¶ 2(a)). Smith exited the vehicle with his shirt covering his face and approached the two bank employees who were intimidated by this act. One of the bank employees started to scream when Smith approached her. (ECF No. 49, ¶ 12). Smith quickly grabbed the two ATM canisters which contained over $18,000 in United States Currency and reentered the vehicle with the money. Giles and Smith fled the bank's parking lot and headed toward Oklahoma. (ECF No. 31, ¶ 2(b)). Following the bank robbery, law enforcement officers interviewed the two bank employees who stated they were scared to death and still in fear following the bank robbery. (ECF No. 31, ¶ 2(d)).

The PSR reported that an eyewitness employed at a business across the street from the bank saw Giles and his co-defendant leave the bank's parking lot at a high rate of speed. (ECF No. 44, ¶ 13). The eyewitness described one of the tellers as being "shocked" and the other "hysterical" when Smith approached them. (*Id.*).

The two bank employees, "T. L." and "S. M.," testified at sentencing. T. L. explained that she and S. M. had gone out to the ATM machine and had taken the cannisters out and set them down in between them. (2:19-CR-20017, ECF No. 13, p. 12)[2]. As S. M. was printing the receipts they needed, "a car pulled right up . . . probably five feet from us." (*Id.*). Then "he got out, and

---

2 The transcript of the combined sentencing and revocation hearing held on June 12, 2019 is only filed in Case No. 2:19-CR-20017 and appears at ECF No. 13.

he had something over his face," and "I was just terrified." She described Smith going right

between them, and she was screaming. (*Id*.). When S. M. turned around from the ATM, "he was

already right there in our face. We had no clue what was going to happen. We didn't know what

he was going to do. That's probably the most terrified I've ever been in my life." (*Id*.). Smith

said nothing to them, and he did not display a gun, but "[w]e had no clue that he did not have a

weapon. We didn't have a clue who was in the car. And it was terrifying. We feared for our

lives." (*Id*., pp. 16-17).

    S. M. also stated that they had opened the ATM and taken the cannisters out, placing them

on the ground next to them. (2:19-CR-20017, ECF No. 13, p. 23). As she started printing the

receipts, "the next thing I remember is [T. L.] started screaming and backing away." (*Id*., pp. 23-

24). When she turned around, "there was a man right next to me with his face covered. . . . I didn't

know if he was going to hit me with something or grab me and take me with him. . . . then he just

reached down and grabbed the cannisters and ran and got into the car. And I didn't know how

many people were in the car, and if they had weapons inside." (*Id*., p. 24). "It was utter fear."

(*Id*.).

    "Intimidation" under 18 U.S.C. § 2113(a) is conduct "reasonably calculated to put another

in fear." *United States v. Smith*, 973 F.2d 603, 604 (8th Cir. 1992) (citing *United States v. Higdon*,

832 F.2d 312, 315 (5th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988)). "Under this test 'the

subjective courageousness or timidity of the victim is irrelevant; the acts of the defendant must

constitute an intimidation to an ordinary, reasonable person.'" *Id*. Further, evidence that a

defendant's acts did induce fear in an individual victim is probative of whether the defendant's

acts were objectively intimidating. *Id*.; *see also United States v. Yockel*, 320 F.3d 818, 825 (8th

Cir. 2003).

–14–

The court in *Smith* cited *United States v. Robinson*, 527 F.2d 1170 (6th Cir. 1975), a case in which the defendant told a teller "give me all your money" and gave her a pouch to fill. Both the defendant's hands were visible to the teller, but the defendant wore a leather coat where, the court noted, "a weapon could presumably be concealed." *Id*. at 1172. While the defendant in *Robinson* made no express threat of harm, the court there upheld the jury's intimidation finding, noting that "in an era characterized by a dramatic increase in crime generally . . . and by increased violence . . . such circumstances could well 'produce in the ordinary person fear of bodily harm.'" *Id*. (citation omitted).

Citing *Smith*, the Eighth Circuit Court of Appeals in *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003) reaffirmed that in this circuit "intimidation," as it is used in § 2113(a), is determined by an objective standard. Whether a defendant intended to intimidate a teller is irrelevant to determining guilt. *Id*. Moreover, "the display of a weapon, a threat to use a weapon, or even a verbal or nonverbal hint of a weapon, is not a necessary ingredient of intimidation under § 2113(a)." *Id*. at 825 (internal citations omitted).

Here, Giles admitted to aiding and abetting his co-defendant Smith in robbing a federally insured bank by intimidation. He drove a vehicle up close (within about five feet) to two bank employees who were engaged in resupplying the bank's ATM. Smith then got out of the vehicle and with his face covered quickly approached the two bank employees. One of the tellers immediately began screaming. When the other teller turned around, Smith was right next to her, and she did not know what he was going to do. She was afraid he might hit her or grab her and take her with him. Smith quickly grabbed the ATM cannisters and returned to the car. While the two bank employees did not hear Smith say anything, or see him display a gun or other weapon, they did not know if he had a weapon or not, nor if someone in the car had a weapon. Smith's

actions caused both tellers to fear for their lives.

Giles points to no new evidence to support his claim of actual innocence; instead, he asserts actual innocence because he claims not to have known that his actions were objectively intimidating.  (ECF No. 58, p. 4).  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

He argues the Government had to prove that he knew his actions were objectively intimidating (ECF No. 58, p. 4; ECF No. 59, p. 10); but this argument misconstrues the law and attempts to turn an objective standard, based on an ordinary person in the teller's position, into a subjective standard based on a defendant's point of view.  As *Smith* and *Yockel* make clear, whether Giles intended to intimidate a teller is irrelevant to determining guilt under § 2113(a).

Giles' guilty plea admissions and the evidence of record is sufficient to establish that the taking of the federally insured bank's money was committed through intimidation.  Accordingly, Giles' claim of actual innocence to avoid his procedural default fails, and his § 2255 Motion should be dismissed.

Even if the Court were to consider the merits of Giles' claims, they fail for the reasons discussed below.

### C.    Sufficiency of the Indictment

Giles asserts he was "not charged with the element of knowledge with respect to the threat of force."  (ECF No. 58, p. 4).  The argument has no merit.

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."  Fed. R. Crim. P. 7(c).  It must also give the citation

of the statute, rule, regulation, or other provision of law the defendant is alleged to have violated for each count charged. *Id*.

"An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Carter*, 270 F.3d 731, 736 (8th Cir. 2001) (citations omitted). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted. *Id*.

Giles was charged with aiding and abetting a bank robbery, in violation of 18 U.S.C. § 2113(a), which provides: "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . . any property or money or any thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both."

Count One of the Indictment charged Giles as follows:

> On or about July 26, 2018, in the Western District of Arkansas, Fort Smith Division, the defendants, **Daniel Giles** and **Romaris Smith**, each aiding and abetting the other, by force, violence and intimidation did take and attempt to take from the person and presence of another, United States currency, belonging to and in the care, custody, control, management and possession of Bank of the Ozarks, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Sections 2113(a) and 2. (ECF No. 1) (bold in original).

The Eighth Circuit has made clear that where an indictment charging an offense under 18 U.S.C. § 2113(a) tracks the statute and includes all the statutory elements of the crime, the

indictment is not fatally defective for failing to allege felonious intent. *United States v. Donahue*, 948 F.2d 438, 440-41 (8th Cir. 1991) (citations omitted). The statutory language of § 2113(a) does not "fail to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," nor is it "so indefinite that it encourages arbitrary and erratic arrests and convictions." *Id*. at 441 (internal quotation marks and citations omitted); *see also Walker v. United States*, 439 F.2d 1114, 1115 (6th Cir. 1971) (an indictment framed in the language of the statute clearly charges the defendant with a criminal offense and fairly apprises him of the crime); *United States v. McNamara*, 422 F.2d 499, 500 (1st Cir. 1970) (an indictment using the statutory words "force," "violence," and "intimidation," and omitting, as does the statute, any separate reference to felonious intent was not fatally defective).

In this case, the Indictment clearly tracked the statutory language in § 2113(a), and it fairly informed Giles of the bank robbery charge against him. His claim regarding the alleged insufficiency of the Indictment fails.

And, as the Government points out, it is also significant that Giles did not challenge the sufficiency of the Indictment before pleading guilty. It is well established that a defendant who enters a guilty plea waives all non-jurisdictional defenses. *Tollett v. Henderson*, 411 U.S. 258, 266 (1973) (guilty pleas in the *Brady*[3] trilogy found to foreclose direct inquiry into the merits of claimed antecedent constitutional violations); *Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989) ("In pleading guilty, a defendant waives all challenges to the prosecution except those related to jurisdiction," including claims regarding search and seizure), *cert. denied*, 493 U.S. 869 (1989). Thus, under the *Tollett* line of cases, a defendant who voluntarily and intelligently enters

---

[3] *Brady v. United States*, 397 U.S. 742 (1970).

a plea of guilty is precluded from later obtaining collateral review of antecedent non-jurisdictional defects.

To the extent Giles claims the Court was deprived of jurisdiction because the Indictment was defective in charging an offense under 18 U.S.C. § 2113(a), such a claim is precluded by Eighth Circuit precedent. *Donahue*, *supra*; *United States v. Frook*, 616 F.3d 773, 778 (8th Cir. 2010) (defects in an indictment do not deprive a court of its power to adjudicate a case); *United States v. Medina*, No. 5:14-CR-50002-001, 2018 WL 1513008, at *2 (W.D. Ark. Mar. 27, 2018) ("Defects in an indictment do not deprive a court of its power to adjudicate a case, and thus, do not constitute jurisdictional defects.").

Finally, as previously noted, "actual innocence" means factual innocence and not just legal insufficiency. *Bousley*, 522 U.S. at 623. Giles' argument regarding the alleged insufficiency of the Indictment is a claim, at best, of legal insufficiency, not factual innocence. *French v. United States*, No. 14-00531-CV-W-GAF, 2014 WL 12603508, at *6 (W.D. Mo. Oct. 10, 2014) (alleged improper indictment not a claim of factual innocence). As such, Giles fails to present a viable claim of actual innocence based on the allegedly defective Indictment to which he pleaded guilty.

### D.    Sufficiency of the Evidence

Giles also asserts he "did not admit to having knowledge with respect to the threat of force," and "during sentencing the judge explicitly found the actual conduct 'does not demonstrate the use . . . or threatened use of physical force.'" (ECF No. 58, p. 4). Any complaint regarding the sufficiency of the evidence was waived by Giles' guilty plea.

When a guilty plea is entered, the focus of a subsequent collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (citing *Tollett*, 411 U.S. at 266). As the Court in *Tollett*

observed:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, *he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advice he received from counsel was not within the standards set forth in *McMann*.[4]
>
> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted), it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings."  *Id*. at 267 (emphasis added).

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255.  *Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Machibroda v. United States*, 368 U.S. 487, 493 (1962); and *Kercheval v. United States*,

---

4 *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.")

274 U.S. 220, 223 (1927). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

To challenge the voluntary and intelligent nature of his guilty plea, Giles alleges he did not admit to "having knowledge with respect to the threat of force" (ECF No. 58, p. 4), and the Government "failed to present evidence in the factual basis proving that I knew my actions were objectively intimidating" (ECF No. 59, p. 12). He also argues the Court misinformed him of the elements of the § 2113(a) offense, and that "I pled guilty to a nonexistent offense – a robbery in which violence was not used or threatened." (*Id.*, pp. 12-14). These arguments are unpersuasive.

As previously discussed, in this circuit "intimidation," as it is used in § 2113(a), is determined by an objective standard: whether an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's actions. *Yockel*, 320 F.3d at 823-24. Whether or not Giles intended to intimidate the bank employees, or as he phrases it – had knowledge with respect to the use of force – is irrelevant in determining his guilt.

In his written Plea Agreement, Giles specifically admitted that on July 26, 2018, he drove a vehicle with his passenger, Smith, to a Bank of the Ozarks branch located in Fort Smith, Arkansas, a bank insured by the FDIC. He admitted that as they approached the bank in their vehicle, two bank employees were outside of the bank changing the ATM. (ECF No. 31, ¶ 2(a)). He agreed that Smith exited the vehicle with his shirt covering his face and approached the two

bank employees *who were intimidated by this act*. (*Id*., ¶ 2(b) (emphasis added)). He admitted that Smith quickly picked up the two ATM canisters, which contained over $18,000 in United States Currency, reentered the vehicle with the money, and they fled the bank's parking lot. (*Id*.). He also admitted that after the bank robbery, law enforcement officers interviewed the two bank employees who stated they were scared to death and still in fear following the bank robbery. (*Id*., ¶ 2(d)).

Giles stated in the Plea Agreement that he had fully discussed the facts of the case with his defense counsel and the elements of the crime to which he agreed to plead guilty. (ECF No. 31, ¶ 2). He further admitted committing each of the elements of the offense to which he was pleading guilty, and he admitted there was a factual basis for his guilty plea. (*Id*.).

During the change of plea hearing on January 7, 2019, the Court confirmed that Giles had received a copy of the Indictment and reviewed it with his attorney, with whom he was well satisfied. (ECF No. 57, p. 4). The Court then reviewed the charges in the Indictment with Giles. (*Id*., pp. 4-5). Giles acknowledged that the Plea Agreement had been explained to him; he had an opportunity to read it and discuss it with his counsel before signing it; and he understood it. (*Id*., p. 5). The Court explained the elements of the offense to Giles, stating:

> "Now, Count I of the Indictment, again, charges you with bank robbery and aiding and abetting bank robbery. At trial, the government would have to prove the essential elements of this charge. They would have to prove the following elements: That on or about July 26, 2018, you took currency, United States currency from a person or in the presence of another while that currency was in the care or custody of the Bank of Ozarks; number two, *that the taking was by intimidation, that is, in a way that would make an ordinary person fear bodily harm*; and, number three, the Bank of the Ozarks deposits at that time were insured by the Federal Deposit Insurance Corporation. Now, you can also be found guilty of bank robbery if you aided and abetted in the commission of the offense, and that occurs where, number one, you knew the offense was being

–22–

committed or going to be committed; number two, you knowingly acted in some way for the purpose of causing or encouraging or aiding the commission of the offense." (*Id.*, pp. 9-10) (emphasis added).

Considering the Eighth Circuit precedent discussed above, the Court accurately informed Giles of the elements of the offense of conviction. The AUSA then provided the factual basis for the charge, including the statement that the two bank employees were intimidated by Smith exiting the vehicle with a shirt covering his face and approaching them. (*Id.*, p. 11). She related that the two bank employees told law enforcement "they were scared to death" and were still in fear following the bank robbery. (*Id.*). She further advised that if called upon to testify, "the victims in this case would testify that the Defendant's actions intimidated them and placed them in great fear, which is due to the covering of Mr. Smith's face as well as the close proximity of the vehicle to both of the bank employees and the close proximity of Mr. Smith to these bank employees." (*Id.*). Having heard the AUSA's recitation of the factual basis to support the charge, Giles agreed that if his case were to go to trial, the Government could prove those facts, including the facts regarding intimidation. (*Id.*, p. 12).

Thus, the record before the Court firmly supports the element of intimidation in this case. Giles drove the vehicle up close to the two bank employees, then Smith exited the vehicle with his face covered and quickly approached the two bank employees and grabbed the ATM cannisters away from them. The two bank employees were in fact intimidated by these actions – "scared to death" and fearing for their lives. Proof that Giles *knew* his actions were objectively intimidating is not required, only proof that an ordinary person in the teller's position reasonably could infer a threat of bodily harm from Giles' actions, regardless of whether Giles actually intended the intimidation. Such proof was presented and explicitly admitted by Giles. His argument on this

point has no merit, and his knowing and voluntary guilty plea bars his claim regarding the sufficiency of the evidence to support his conviction.

One final point needs to be addressed. Giles alleges that both the Probation Office and the Court at sentencing concluded that his conduct did not amount to the use of, attempted use of, or threatened use of physical force. (ECF No. 58, p. 4; ECF No. 59, p. 12). It is true the Probation Office determined that Giles' commission of the bank robbery constituted only a Grade B violation for purposes of his supervised release revocation proceeding. (Case No. 2:19-CR-20017, ECF No. 8 *SEALED*). And, at sentencing, the Court noted it is to look at the defendant's actual conduct, as opposed to looking at whether the underlying offense is a "crime of violence" using the categorical approach. Stating "there's no question that here the bank robbery would be a crime of violence," the Court then explained that under Eighth Circuit precedent, "the Court is to determine the actual conduct in whether or not it involves the use, attempted use, threatened use, of physical force against the person of another as opposed to the crime that the person is charged with." (Case No. 2:19-CR-20017, ECF No. 13, p. 32). Presenting argument on the issue, Giles' counsel conceded that when someone who is about to steal money covers their face "that would certainly go to an intimidation factor," but in the context of determining the grade of revocation violation, "we actually have to look at the actual conduct." (*Id.*, p. 38). The Court overruled the Government's objection to the Probation Office's determination of a Grade B violation, finding "the actual conduct does not demonstrate any use of physical force, any attempted use of physical force[,] or to threaten use of physical force, which is required in order for the Court to be able to make a determination that it's a crime of violence." (*Id.*, pp. 38-39).

These findings, however, do not support Giles' claim for habeas relief for two reasons. First, his argument focuses on the "by force and violence" requirement of § 2113(a), but it ignores

–24–

the "or by intimidation" language in the statute.  Second, the Court's findings at sentencing were not related to Giles' commission of the underlying bank robbery offense, but whether his commission of that offense should be classified as a Grade A violation for purposes of his revocation in Case No. 2:19-CR-20017.  Thus, the Court's determination of whether the bank robbery was a "crime of violence" under U.S.S.G. § 7B1.1(a)(1) is a separate inquiry and unrelated to whether Giles committed the bank robbery "by intimidation," which the record clearly establishes.

### III.    No Evidentiary Hearing is Warranted

A petitioner is entitled to an evidentiary hearing on a habeas motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief.  *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005) (citing 28 U.S.C. § 2255).   No evidentiary hearing is required, "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007); *Anjulo-Lopez v. U.S.*, 541 F.3d 814, 817 (8th Cir. 2008).  Those are the circumstances in this case.  Resolution of Giles' claims can be accomplished by reviewing the record and applicable law.  A thorough review of Giles' § 2255 motion, the files and records of this case, and applicable law shows that Giles is not entitled to relief.  The summary dismissal of Giles' § 2255 motion, without an evidentiary hearing, is recommended.

### IV.    No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has made a substantial showing of the denial of a constitutional right.  A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the

petitioner did not prevail on the merits in the court considering his case at present.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

For the reasons discussed above, Giles has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### V.    Conclusion

For the reasons and upon the authorities discussed above, Giles' claims are untimely, procedurally barred, and unsupported by the record in this case.  It is recommended that Giles' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed October 7, 2020 (ECF No. 58) be **DISMISSED with PREJUDICE**.

It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of February 2021.

/s/  *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE